UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUSAN M. PADULA,

        Plaintiff,

v.                               Case No.  8:18-cv-887-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,[1]

        Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

## I.

### A.  Procedural Background

Plaintiff filed an application for DIB (Tr. 148-49).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 62-73).  Plaintiff then requested an administrative hearing (Tr. 74-75).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 30-49).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-29).  Subsequently, Plaintiff requested review from the Appeals Council, which

_____

[1]  Andrew M. Saul is now the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this matter.  No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

the Appeals Council denied (Tr. 1-6, 146-47). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1959, claimed disability beginning January 22, 2014 (Tr. 148). Plaintiff obtained a high school education (Tr. 171). Plaintiff's past relevant work experience included work as a hair stylist (Tr. 44–45, 171). Plaintiff alleged disability due to tennis elbow in both elbows, trigger finger in the right hand, and foot pain related to pulled tendons in both feet (Tr. 170).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through March 31, 2019 and that Plaintiff had not engaged in substantial gainful activity since January 22, 2014, the alleged onset date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: lateral epicondylitis; trigger finger and thumb; carpal tunnel syndrome; minimal degenerative changes of the bilateral wrists, hands, and elbows; bilateral Morton's neuroma of second web space; metatarsalgia; tenosynovitis; and thoracic compression fracture (Tr. 17). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work except that she could only frequently reach, handle, finger, feel, push, pull, and operate foot controls; occasionally climb and crawl; frequently balance, stoop, kneel, and crouch; and frequently operate motor vehicles (Tr. 19). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to

produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 20). Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as a hair stylist (Tr. 24). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 25).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his

or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*).

## III.

Plaintiff argues that the ALJ erred by failing to properly consider the opinion evidence from Dr. Leo Chen, Dr. Kalyani Ganesh, and Dr. Ciceron Villavivcencio Lazo. When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. § 404.1527. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record, and the area of the doctor's specialization. 20 C.F.R. § 404.1527(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. § 404.1527(c)(3). Further, the more consistent the medical opinion is with the record, the more weight that opinion will receive. 20 C.F.R. § 404.1527(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).

As the Commissioner notes, a physician's opinion as to what a claimant can still do despite his or her impairments differs from an ALJ's assessment of a claimant's RFC. *See* 20 C.F.R. §§ 404.1513, 404.1545, 404.1546; Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 (July 2, 1996). Indeed, SSR 96-5p explains:

> Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).
>
> ***
>
> A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence (including other medical source statements that may be in the case record) when assessing an individual's RFC. Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment.

SSR 96-5p, 1996 WL 374183, at *4 & *5. The task of determining a claimant's RFC and ability to work thus rests with the ALJ, not a medical source. *See Moore v. Soc. Sec. Admin., Com'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("Contrary to the district court's reasoning, the ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC … Indeed, the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC."); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").

As noted, Plaintiff contends that the ALJ failed to properly consider the medical opinions from Dr. Chen, Dr. Ganesh, and Dr. Lazo. As discussed more fully below, the ALJ

properly considered each of the medical opinions and did not substitute her opinion for that of the medical sources.

### A.     Dr. Chen

First, Plaintiff argues that the ALJ failed to properly consider the opinion of Dr. Chen. In December 2016, Plaintiff presented to Dr. Chen for a consultative orthopedic examination (Tr. 322-28). Dr. Chen noted that X-rays demonstrated minimal degenerative changes, fairly well-maintained joint spaces, and no acute bony injuries in the bilateral wrists, bilateral hands, and bilateral elbows (Tr. 323). As the ALJ discussed, Dr. Chen set forth the following findings after examination:

> The claimant has a normal gait. She is able to toe, heel, and tandem walk without much difficulty. Her shoulders are well centered over her pelvis; toes are downgoing; pulses and reflexes are symmetric. Her skin is intact; she is grossly neurovascularly intact. However, she does have some changes in her neuro exam that we will discuss below. Straight leg raise seated is negative. There is no pain to palpation around her lumbar spine. There is no obvious spasm seen today. She does have good range of motion of her back and neck and her extremities. … Exam of her hands shows that she has tenderness over her A1 pulleys around her bilateral ring finger and thumbs. She is also tender over the lateral epicondyle and the common extensor origins of both elbows, right greater than left. Her hands are more symptomatic on the left. There is some triggering and catching today. There is some slight swelling in her hands and her wrist area. She has positive Tinel's consistent with carpal tunnel syndrome in both hands with some decreased subjective sensation of her median distribution in both hands. Bilateral feet show no obvious deformity. There is some slight tenderness in her second webspace in both feet. She is able to perform fine manipulation such as remove and apply her jewelry including her ring on her finger. She is able to use the [doorknob] in the exam room. Her grip strength is 5-/5 but it is symmetrical. There are no other signs of joint or extremity inflammation, discoloration or deformity.

(Tr. 23, 324). Given his findings, Dr. Chen diagnosed Plaintiff with bilateral hand, wrist, and elbow pain; bilateral foot pain; bilateral ring finger and thumb trigger fingers; bilateral lateral epicondylitis; bilateral carpal tunnel syndrome; and bilateral Morton's neuroma in the second webspace (Tr. 324). Dr. Chen then noted that, though Plaintiff's ability to perform physical activity might be limited due to her symptoms, her ability to perform physical activity might be

significantly improved with appropriate evaluation and definitive treatment by the orthopedic surgeon for her complaints (Tr. 324-25). According to Dr. Chen, Plaintiff had been told about and offered surgery, but she appeared scared to move forward with surgery, even though, in Dr. Chen's opinion, surgical intervention might "certainly help her function improve significantly" (Tr. 325).

Following the examination, Dr. Chen completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) ("Medical Source Statement") (Tr. 329-34). As the ALJ discussed, Dr. Chen opined that Plaintiff could occasionally lift and carry 21 to 100 pounds; frequently lift 11 to 20 pounds; and continuously lift up to 10 pounds (Tr. 23-24, 329). Dr. Chen further opined that Plaintiff could only sit, stand, and walk for 30 minutes at one time without interruption and for a total of 3 hours in an 8-hour workday and that she did not require the use of a cane to ambulate (Tr. 330). With respect to Plaintiff's use of her hands and feet, Dr. Chen opined that Plaintiff could frequently engage in reaching in all directions, handling, fingering, feeling, pushing, and pulling with each hand and could frequently operate foot controls with each foot (Tr. 331). Regarding postural limitations, Dr. Chen opined that Plaintiff could frequently balance, stoop, kneel, and crouch and could occasionally crawl or climb stairs, ramps, ladders, and scaffolds (Tr. 332). As to environmental limitations, Dr. Chen opined that Plaintiff could frequently operate a motor vehicle but could otherwise continuously tolerate unprotected heights, moving mechanical parts, humidity, wetness, extreme cold, extreme heat, vibrations, and dusts, odors, fumes, and other pulmonary irritants (Tr. 333).

After discussing Dr. Chen's findings, the ALJ discussed the weight she afforded to Dr. Chen's assessment and opinions, stating:

> Significant weight is assigned to Dr. Chen's assessment and opinions. His opinions are supported by the claimant's treatment history, the medically acceptable clinical and diagnostic testing, and the other substantial evidence contained in the record. The claimant's residual functional capacity is slightly

more restrictive than Dr. Chen's because the evidence, when viewed in a light most favorable to the claimant, could result in the greater limitations set out in her residual functional capacity. The undersigned adopted the non-exertional limitations reported by Dr. Chen in determining the residual functional capacity.

(Tr. 23-24). Indeed, in setting forth the RFC, the ALJ limited Plaintiff to only frequently reaching, handling, fingering, feeling, pushing, pulling, and operating foot controls; occasionally climbing and crawling; and frequently operating motor vehicles (Tr. 19). Where the ALJ deviated from Dr. Chen's suggested limitations was in the exertional limitations. Though Plaintiff argues to the contrary, the record shows that the ALJ limited Plaintiff to a reduced range of light work[2] (Tr. 19) whereas Dr. Chen opined that Plaintiff could perform work more akin to medium work[3] (Tr. 329). The ALJ therefore appropriately indicated that she set forth a slightly more restricted RFC than Dr. Chen's while incorporating the non-exertional limitations reported by Dr. Chen (Tr. 23). Furthermore, the ALJ thoroughly discussed and considered Dr. Chen's findings and opinions in conjunction with the other evidence of record and properly included the limitations supported by the record. The ALJ correctly determined that Dr. Chen's extreme limitations regarding Plaintiff's ability to sit, stand, or walk did not comport with the other evidence of record demonstrating no significant limitations with sitting, standing, or walking or with strength and range of motion in the lower extremities (Tr. 19-24, 278-79, 316-17, 324, 330, 343, 347). Substantial evidence therefore supports the ALJ's consideration of Dr. Chen's opinion.

---

[2] Under the regulations, light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b).

[3] In contrast to light work, medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

## B.    Dr. Ganesh

Next, Plaintiff asserts that the ALJ did not properly consider the opinion of Dr. Ganesh. In September 2014, Plaintiff presented to Dr. Ganesh for a consultative internal medicine examination (Tr. 277-83). Plaintiff informed Dr. Ganesh that she stopped working as a hairdresser because of tennis elbows, right and left side; right hand trigger ring finger; and a problem with tendons in both feet (Tr. 277). According to Plaintiff, she was diagnosed with metatarsalgia/flexion tenosynovitis and received injections to both elbows, 4 or 5 times on the right elbow and 2 on the left, which helped for a while (Tr. 277). Plaintiff additionally stated that she could deal with the right trigger finger and could perform fine motor activities because she could use the other fingers (Tr. 277). Plaintiff indicated that she experienced pain in her feet along the metatarsal joint, more so with prolonged standing, for which she took medication (Tr. 277). Finally, Plaintiff stated that she used braces for her tennis elbow, which seemed to help (Tr. 277).

Upon examination, Dr. Ganesh noted that Plaintiff demonstrated a normal gait, normal stance, and could walk on her heels but not on her toes (Tr. 278). Dr. Ganesh further noted that Plaintiff's squat was 50% and Plaintiff used bilateral upper extremity braces but that Plaintiff needed no help changing for her exam, no help getting on and off the exam table, and was able to rise from a chair without difficulty (Tr. 278). Dr. Ganesh also made the following findings:

> MUSCULOSKELETAL: Cervical spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. No scoliosis, kyphosis, or abnormality in thoracic spine. Lumbar spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. SLR negative bilaterally. Full ROM of shoulders, elbows, forearms, and wrists bilaterally. Full ROM of hips, knees, and ankles bilaterally. No evident subluxations, contractures, ankylosis, or thickening. Joints stable and nontender. No redness, heat, swelling, or effusion.
>
> NEUROLOGIC: DTRs in upper and lower extremities absent bilaterally. No sensory deficit noted. Strength 5/5 in the upper and lower extremities.

EXTREMITIES: No cyanosis, clubbing, or edema. Pulses physiologic and equal. No significant varicosities or trophic changes. No muscle atrophy evident.

FINE MOTOR ACTIVITY OF HANDS: Hand and finger dexterity intact. She does have right ring finger as a trigger finger, but able to use her hands fairly well. Grip strength is 5/5 bilaterally.

(Tr. 279).

As part of his examination, Dr. Ganesh opined that Plaintiff demonstrated no gross limitations sitting, standing, and walking but that Plaintiff experienced a moderate degree of limitation for the repetitive use of her upper extremities (Tr. 279). Dr. Ganesh also noted that Plaintiff's prognosis at that time would be guarded (Tr. 279). In considering Dr. Ganesh's opinions, the ALJ indicated that she afforded significant weight to such opinions because the opinions were generally supported by Plaintiff's treatment history, reported daily activities, the medically acceptable clinical and diagnostic testing contained in the record, and all the other substantial evidence contained in the record (Tr. 23).

Plaintiff argues that the ALJ erred by failing to include in the RFC the moderate degree of limitation for the repetitive use of Plaintiff's upper extremities offered by Dr. Lazo. As an initial matter, the ALJ accounted for limitations in Plaintiff's upper extremities by limiting Plaintiff to frequent rather than constant reaching, handling, fingering, and feeling (Tr. 19).[4] Going further, as the decision indicates, the ALJ considered all the medical evidence, including but not limited to Dr. Ganesh's findings that Plaintiff exhibited a full range of motion in her shoulders, elbows, forearms, and wrists bilaterally; intact hand and finger dexterity; ability to use her hands fairly well; and 5/5 grip strength, in properly determining which upper extremity limitations to include in the RFC (Tr. 19-24, 262, 279, 316, 339, 347). Though Plaintiff argues

---

[4] The term "frequent" describes an activity occurring from one-third to two-thirds of the workday. *See* Social Security Ruling 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

that the ALJ should have included greater limitations in the RFC to account for Plaintiff's upper extremity limitations, the record supports the ALJ's RFC assessment. Substantial evidence supports the ALJ's decision in that regard.

### C. Dr. Lazo

Finally, Plaintiff contends that the ALJ erred in affording little weight to Dr. Lazo's opinion. In May 2016, Plaintiff presented to Dr. Lazo for examination (Tr. 315-19). Dr. Lazo noted that Plaintiff experienced no difficulty getting into and out of the exam room table and chair, did not require use of an assistive device to ambulate, and demonstrated gait and station without any apparent impairment (Tr. 316-17). With respect to Plaintiff's upper and lower extremities, Dr. Lazo found:

- Upper Extremities: The client is right-handed. Mild interphalangeal joint deformity and mild swelling. Moderate swelling and pain of first carpal metacarpal joint. No redness, increased temperature in the joints of the upper extremities at the time of examination. No atrophy of the arms. Tenderness on pressure over the joints over the R side. Mil deformity of R wrist and moderate tenderness over palmar and ulnar area. Grip strengths were 4/5 on the R and 5/5 on the L. Arm strengths were 4/5 on the R and 5/5 on the L. Good ROM of the shoulders and hands. Mild impairment of fine or gross dexterities on the R.

- Lower Extremities: Moderate hammer toe deformity of the R foot and moderate deformity of first metatarsal phalengel joint. No increased temperature or welling of the joints of the lower extremities at the time of examination. Good ROM of hips, knees, ankles and fee. No atrophy of legs. Leg strengths were 5/5 bilaterally. Foot strengths were 5/5 bilaterally. Straight leg raising in the supine position was 80 degrees bilaterally without reported pain. Straight leg raising in the sitting position was 90 degrees bilaterally without reported pain. The client was able to heel, toe, tandem walk and squat without difficulty.

- Pulses: dorsalis pedis 3+ bilateral, posterior tibalis 3+ bilateral.

(Tr. 316-17). Dr. Lazo also noted that Plaintiff's Achilles reflexes were 1+ bilaterally; patellar reflexes were 3+ bilaterally; plantar reflexes were good; biceps, triceps, and supinator reflexes were 3+ and symmetrical; Babinski, Clonus, and Romber signs were negative; and fingers to

nose was normal (Tr. 317).  Dr. Lazo also noted that Plaintiff cranial nerves were grossly intact,

although Plaintiff stated that she experienced burning sensation on the radial part of both wrists

and over thigh areas (Tr. 317).

After the examination, Dr. Lazo submitted a Medical Source Statement (Tr. 320-21).

Dr. Lazo opined that Plaintiff could only sit for one hour and stand for 30 minutes at one time

without breaks  on a sustained basis during an eight-hour workday but also could only sit for

one hour and stand for 30 minutes total over the course of an eight-hour workday, including the

need to take unscheduled breaks every 25 minutes (Tr. 320).  Dr. Lazo further opined that

Plaintiff occasionally could lift no more than 10 pounds and frequently or constantly could lift

no more than five pounds (Tr. 320).  According to Dr. Lazo, Plaintiff could engage in no

overhead reaching and could only occasionally engage in fine manipulation, simple grasping,

reaching, handling, and fingering (Tr. 320).

In assessing Dr. Lazo's opinions, the ALJ afforded such opinions little weight,

concluding:

> His opinions are internally inconsistent in that she can sit for one hour at a time
> and no more than one hour in an eight-hour day.  She can stand for thirty minutes
> at a time but no more than thirty minutes in an eight-hour day.  The record does
> not show that the claimant would require a seven-hour break period after the
> activities.  The claimant's strength is not compromised.  There are no conditions
> that would cause such reduction in lifting.  The exam evidence shows that she
> has good strength in all upper extremities other than the trigger finger with
> retained dexterity in the other joints in the hands.  She has mild neuropathy in
> her feet without neurological deficits.  Her gait is repeatedly characterized as
> normal.  The record shows only conservative treatment and no recent treatment
> of her primary limiting conditions with no mention of surgery other than a
> possible trigger release that has not been performed.  There is no indication in
> the record that the claimant should be limited to such a great extent.

(Tr. 22).  Plaintiff argues that the reasons provided by the ALJ for discrediting Dr. Lazo's

opinions lack merit.  Despite Plaintiff's contentions to the contrary, the ALJ correctly concluded

that Dr. Lazo's opinion should only be afforded little weight as the opinion was internally

inconsistent, the examination findings did not support Dr. Lazo's limitations, and Plaintiff only received conservative treatment.

As the ALJ pointed out, Dr. Lazo's finding regarding Plaintiff's ability to sit and stand is internally inconsistent because Dr. Lazo opined that Plaintiff could sit for one hour at a time yet no more than one hour in an eight-hour day and that Plaintiff could stand for thirty minutes at a time yet no more than thirty minutes in an eight-hour day (Tr. 22, 320). Such findings simply are not consistent, and the ALJ therefore did not need to afford Dr. Lazo's opinion significant weight as to those limitations. Plaintiff's argument that Dr. Lazo's misreading of the question led to the inconsistency is merely conjecture and speculation and does not establish a basis for undermining the ALJ's finding. *See, generally, Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (finding the inferential argument that plaintiff's physicians would likely disagree with the ALJ's RFC determination insufficient to support reversal). Regardless, neither Dr. Lazo's examination findings nor the other evidence of record support such extreme limitations for sitting and standing (Tr. 19-24, 279, 316-17, 324, 330, 343, 347)

Similarly, Plaintiff's other arguments fail. As the ALJ correctly noted, Dr. Lazo's examination findings did not support the limitations set forth in the Medical Source Statement (Tr. 22). For example, Dr. Lazo opined that Plaintiff could engage in no overhead reaching, while the examination findings indicated no atrophy of the arms, arm strengths of 4/5 on the right and 5/5 on the left, and good range of motion of the shoulders and hands (Tr. 316). Further, as the ALJ properly indicated, Plaintiff received only conservative treatment for her impairments. Indeed, during the administrative hearing, Plaintiff indicated that the only treatment she received for her hands, arms, wrists, and feet involved injections, physical therapy, and medication (Tr. 35-37). Plaintiff also indicated that, at the time of the

administrative hearing in April 2017, she had not received *any* treatment for her feet since June 2015 (Tr. 35-36).

Given the foregoing, the ALJ properly considered Dr. Lazo's opinions and appropriately afforded them little weight. In doing so, the ALJ applied the proper legal standards. In sum, substantial evidence supports the ALJ's decision, including consideration of the medical opinions.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 23rd day of September, 2019.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record

15